IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHRISTOPHER SMITH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | Civil Action No. 3:18-CV-2449-D |
| | § | |
| MOSS LAW FIRM, P.C., | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

In this action by plaintiff Christopher Smith ("Smith") asserting claims for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), and the Texas Debt Collection Practices Act, Tex. Fin. Code Ann. §§ 392.001-.404 (West 2016) ("TDCPA"), defendant Moss Law Firm, P.C. ("Moss") moves for summary judgment. For the following reasons, the court denies the motion.

I

Moss is a law firm that exclusively represents creditors in suits to collect consumer debts.[1] Before Moss files a collection suit, its employees are required to confirm the debtor's information, including his name and address for service, on at least two current, independent sources, to ensure that Moss attempts to collect the debt from the correct person at the most

---

[1] In deciding Moss's motion for summary judgment, the court views the evidence in the light most favorable to Smith as the summary judgment nonmovant and draws all reasonable inferences in his favor. *See, e.g., Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

recent address.  In cases where the debtor may have used an alias or alternative name, Moss

employees are required to adhere to Moss's Procedure for Skipping Accounts for Suit

("Skiptracing Policy"), which states, in pertinent part:

> If sources show an alternate or more complete name for the
> consumer other than what downloaded from the client, the
> account should be reviewed for possibly adding an "aka" to the
> field containing the consumer's name on the Debtor Tab, using
> these guidelines: . . .  Only add when all sources show a
> different name other than that in CM[.]

D. App. 176.

In October 2017 Moss filed suit in Dallas County Justice Court on behalf of its client,

Barclays Delaware Bank ("Barclays"), to collect a delinquent debt owed by Christopher O.

Smith II ("Debtor").  Debtor is the son of plaintiff Smith.  At all relevant times, Debtor

resided with his parents on Sun Valley Drive[2] in Dallas, Texas.  Although the name

"Christopher O Smith II" is reflected on the credit card account statement attached to the

justice-court petition, the petition itself refers only to "Christopher O Smith."  D. App. 91,

95.

On October 14 or October 15, 2017[3] a private process server served Smith with the

---

[2]Although the specific residence address is disclosed in the summary judgment record,
the court will refer to the address by street name for privacy protection purposes.  *See* Fed.
R. Civ. P. 5.2 (addressing privacy protection in civil cases); Fed. R. Crim. P. 49.1(a)(5)
(providing in a criminal case that an individual's home address be limited to "the city and
state of the home address.").

[3]Smith contends that the record shows that he was served with process on Sunday,
October 15, 2017.  Although Smith does not cite any evidence in support of this assertion,
he refers in response to Moss's statement of facts to the "Transcript of the October 16, 2017

justice-court petition at his residence on Sun Valley Drive.  Although Smith knew that he did not owe the debt at issue and "immediately recognized the lawsuit was for his son, who bore his exact name, but with the suffix 'II' attached," P. Br. 5, Smith accepted service.

On Monday, October 16, 2017 Smith's wife Demetrice contacted Moss to inform it that the collection suit had been improperly filed against her husband.  She provided Smith's date of birth to the receptionist who answered her call, and gave his social security number to David Wright, Esquire ("Wright"), the Moss attorney with whom she spoke.  Wright "verbally advised that [Moss] was not seeking to collect a debt from [Smith]," P. Br. 9, and informed Demetrice that she could either mail the petition and summons back to Moss or that Moss would have them picked up.  Smith maintains that he did not return the documents to Moss because doing so would have "deprived him of the only proof of the suit and service on him."  P. Br. 9.

Despite the alleged assurances from Moss that it was not seeking to collect a debt from Smith, Smith feared that a default judgment would nevertheless be entered against him.  Consequently, Smith searched for and retained defense counsel.  On October 30, 2017 a return of service was filed in the collection suit.[4]  Moss contends that during the process of

---

phone call the Monday after the Sunday Smith was served," P. Br. 9, in which Smith's wife stated, "[h]e just got this here yesterday." D. App. 142. The return of service affidavit states that Smith was served at 2:00 p.m. on October 14, 2017. *Id.* at 145.

[4]Moss maintains that, after the October 16, 2017 telephone call, it immediately instructed the private process server to refrain from filing a return of service or making any further service attempts at the address provided in the petition.

determining whether the petition should be served on Debtor at an address other than the Sun Valley address, it discovered, for the first time, an out-of-state address for Debtor.  Because Moss does not file suit against debtors who live outside of Texas, it internally closed the account and filed a motion to nonsuit[5] the collection action on November 7, 2017.

Smith then filed the instant lawsuit alleging claims against Moss for violations of the FDCPA and TDCPA.  Moss moves for summary judgment.  Smith opposes the motion.

II

When a party moves for summary judgment on claims on which the opposing party will bear the burden of proof at trial, the moving party can meet its summary judgment obligation by pointing the court to the absence of admissible evidence to support the nonmovant's claims.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party does so, the nonmovant must go beyond his pleadings and designate specific facts showing there is a genuine issue for trial.  *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).  An issue is genuine if the evidence is such that a reasonable jury could return a verdict in the nonmovant's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The nonmovant's failure to produce proof as to any essential element of a claim renders all other facts immaterial.  *See TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.).

---

[5]A "nonsuit" is a procedural device recognized by Texas law that is roughly equivalent to a voluntary dismissal under Rule 41(a).  *See Edgar v. Gen. Elec. Co.*, 2002 WL 34722191, at *1 (N.D. Tex. Mar. 5, 2002) (Fitzwater, J.).

Summary judgment is mandatory if the nonmovant fails to meet this burden. *Little*, 37 F.3d at 1076.

For claims or defenses on which the moving party will bear the burden of proof at trial, to be entitled to summary judgment the movant "must establish 'beyond peradventure all of the essential elements of the claim or defense.'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) ( Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). This means that the movant must demonstrate that there are no genuine and material fact disputes and that it is entitled to summary judgment as a matter of law. *See Martin v. Alamo Cmty. Coll. Dist.*, 353 F. 3d 409, 412 (5th Cir. 2003). "The court has noted that the 'beyond peradventure' standard is 'heavy.'" *Carolina Cas. Ins. Co. v. Sowell*, 603 F.Supp.2d 914, 923-24 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.)).

III

The court begins with Moss's argument that it is entitled to summary judgment because Smith lacks Article III standing.

A

The standing doctrine addresses the question of who may properly bring suit in federal court, and "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). It "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its

exercise." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). To establish standing, a plaintiff must meet both constitutional and prudential requirements. *See, e.g., Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 560 (5th Cir. 2001). Moss contends that Smith lacks constitutional standing,[6] which requires that he establish that he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, ___ U.S. ___, 136 S.Ct. 1540, 1547 (2016) (citing *Defenders of Wildlife*, 504 U.S. at 560). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.* (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)).

B

Moss contends that it is entitled to summary judgment because "there is no issue of genuine fact as to whether Plaintiff can prove a causal link between Defendant's alleged violations and any alleged injury in fact or actual damages." D. Br. 14. Regarding Smith's FDCPA claim, Moss posits that Smith lacks standing because he cannot show an injury in fact that created a "real risk of harm" that is fairly traceable to an attempt by Moss to collect a debt from Smith, *id.* at 16; that Smith's acceptance of service of Barclay's justice court suit against Smith's debtor-son is not tantamount to a debt collection activity in violation of the FDCPA, and did not cause any damage or even a risk of harm to Smith; that any alleged risk of harm or injury to Smith resulted from his own irrational belief that Moss sought to collect

---

[6]Although Moss refers to "jurisdictional" standing, it is clear that it is referring to constitutional standing. D. Br. 14

a debt from him despite Moss's assurance that it was not seeking payment from Smith, and Moss's clear attempts to ensure collection efforts were not directed at Smith; and that "because Plaintiff was actually aware Defendant was not seeking to collect a debt from him, he cannot show a risk of real harm that is fairly traceable to Defendant's conduct by simply alleging Defendant attempted to collect a debt from him," *id*. at 17-18.

With respect to Smith's TDCPA claim, Moss maintains that only those who have sustained actual damages from a TDCPA violation have standing to sue; that Smith does not have evidence of any identifiable economic damages, mental anguish that meets the Texas standard, or attorney's fees and costs associated with the instant case; and that even if Smith could quantify his alleged damages, he cannot show a causal connection between Moss's alleged TDCPA violation and such damages.

Smith responds that the mere showing of a violation of the FDCPA sufficiently confers standing because it demonstrates that the consumer suffered a type of harm that Congress intended to protect against; that he has alleged numerous forms of actual damages, including loss of money and emotional damages; that the risk of harm created by Moss's FDCPA violation was material, because it could have resulted in a default judgment, which was stressful to Smith; that Smith incurred expenses in the amount of $1,000 in defending against the wrongful debt collection lawsuit; that Smith experienced emotional stress from managing the litigation; that "[t]he record shows that Plaintiff suffered actual damages in expending costs to hire an attorney, taking time away from work to find an attorney, including the severe distress from being wrongly sued and having his address and phone

number publicly listed," P. Br. 20; and that, in sum, Smith's concrete injury and actual damages were due to Moss's wrongful persistent prosecution of an unlawful lawsuit.

Moss contends in reply that, even if Smith were able to show a statutory violation, this violation would alone be insufficient to confer Article III standing; that Smith has failed to show the required causal connection between his alleged damages and Moss's conduct, because Smith had actual knowledge that Moss was not seeking a judgment against him and cannot claim damages allegedly caused by his belief to the contrary; that because there is no evidence that Moss either intended to take a judgment against Smith or represented to Smith that it was seeking a judgment against him, the pending justice court lawsuit posed no real risk of harm to Smith; that the $1,000 retainer Smith paid to his counsel was for the federal case against Moss, so Smith cannot claim these fees as actual damages incurred in defending the underlying justice court suit; that Moss has failed to point to any evidence that would support mental anguish to the degree required by the TDCPA; and that Smith has provided no support in the record for his claimed economic damages or that these alleged damages were caused by Moss's alleged violation of the TDCPA.

C

The court first addresses whether Smith has standing to bring his FDCPA claim, focusing primarily on whether he has created a genuine issue of material fact regarding the injury element of Article III standing.

1

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion

- 8 -

of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical." *Spokeo*, 136 S.Ct. at 1548 (quoting *Defenders of Wildlife*, 504 U.S. at 560). "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Id.* (citation omitted). Thus while an injury need not be tangible, it cannot be merely abstract or hypothetical. *Id.* at 1548-49. "[T]he violation of a procedural right granted by statute can be sufficient in *some* circumstances to constitute injury in fact." *Id*. at 1549 (emphasis added). "But deprivation of a procedural right without some concrete interest that is affected by the deprivation . . . is insufficient to create Article III standing." *Summers v. Earth Island Inst*., 555 U.S. 488, 496 (2009); *see also Spokeo*, 136 S.Ct. at 1549 ("[Plaintiff] could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III."); *Sayles v. Advanced Recovery Sys., Inc.*, 865 F.3d 246, 250 (2017) (affirming district court's holding that plaintiff had standing to bring FDCPA claim because defendant's violation of 15 U.S.C. § 1692e(8) "exposed [plaintiff] to a real risk of financial harm caused by an inaccurate credit rating.").

Courts across the country, including in the Fifth Circuit, "have considered whether a violation of the FDCPA itself confers standing on a plaintiff, and they have answered that question in the affirmative." *Linehan v. Allianceone Receivables Mgmt., Inc.*, 2016 WL 4765839, at *7 (W.D. Wash. Sept. 13, 2016) (collecting cases); *see also, e.g., Church v. Accretive Health, Inc.*, 654 Fed. Appx. 990, 995 (11th Cir. 2016) ("[the plaintiff] has sufficiently alleged that she has sustained a concrete—*i.e.*, 'real'—injury because she did not receive the allegedly required [FDCPA] disclosures."); *Tourgeman v. Collins Fin. Servs.,*

- 9 -

*Inc.*, 755 F.3d 1109, 1116 (9th Cir. 2014) (holding that "the violation of [the] right not to be the target of misleading debt collection communications . . . constitutes a[n] injury under Article III"); *McLain v. Head Mercantile Co.*, 2017 WL 3710073, at *15 (M.D. La. Aug. 28, 2017) (holding that plaintiff's allegations that she received debt collection letter that did not identify sender and that charged a fee were sufficient for standing because those are the types of harms the FDCPA is meant to address); *Bautz v. ARS Nat'l Servs., Inc.*, 226 F.Supp.3d 131, 141, 143 (E.D.N.Y. 2016) (noting that "[i]n cases where a plaintiff sues to enforce a substantive legal right conferred by statute, she has standing to pursue that claim without need to allege a 'material risk of harm' because the infringement of that right constitutes, in and of itself, a concrete injury," and holding, in context of FDCPA claim, that "adequately alleging a 'false, deceptive, or misleading representation' that is materially misleading to the least sophisticated consumer thus satisfies the concrete injury component of Article III"); *Prindle v. Carrington Mortg. Servs., LLC*, 2016 WL 4369424, at *11 (M.D. Fla. Aug. 16, 2016) ("[B]ecause [plaintiff] had a personal statutory right to be free from abusive debt-collection practices, and because she has alleged facts plausibly showing that [defendant] violated that right, she 'need not allege any additional harm.'" (citation omitted)); *Irvine v. I.C. Sys., Inc.*, 198 F.Supp.3d 1232, 1237 (D. Colo. 2016) ("Through the FDCPA, Congress created statutory legal rights to be free from certain abusive debt collection practices and a debt collector's violation of those rights may constitute a concrete and particularized injury. . . .  Plaintiff's lawsuit does not seek to merely vindicate an interest in defendant's procedural compliance with the FDCPA; rather, plaintiff's suit is based on her

claim that defendant violated her substantive rights under the FDCPA by its conduct and communications regarding plaintiff's debt.").

In this lawsuit, Smith asserts that Moss violated the FDCPA by, *inter alia*, naming him in the collection petition, serving him with process, and failing to immediately dismiss the collection action upon being notified that it had sued the incorrect party.  Because Smith has alleged harm of the type the FDCPA was meant to address, *i.e.*, abusive debt-collection practices, a reasonable jury[7] could find that he suffered an injury for purposes of satisfying Article III standing.

Alternatively, even if Moss is correct that, under *Sayles*, Smith is required to show, *in addition* to the FDCPA violation itself, that he suffered a "risk of real harm," D. Br. 15 (citing *Sayles*, 865 F.3d at 250), Smith has met that burden.  Smith has at least produced evidence that would enable a reasonable jury to find that he had to deal with a lawsuit that improperly named him as a party, "with its attendant legal costs, anxiety, and worry." *Boerner v. LVNV Funding LLC*, 326 F.Supp.3d 665, 675 (E.D. Wis. 2018); *see also, e.g.,* *Ben-Davies v. Blibaum & Assocs., P.A.*, 695 Fed. Appx. 674, 676 (4th Cir. 2017) (holding, in the context of FDCPA claim, that emotional distress is a concrete injury sufficient to support Article III standing); *Camaj v. Makower Abbate Guerra Weggner Vollmer PLLC*,

---

[7]"[W]hen [standing is] challenged by a motion for summary judgment, . . . evidence is required, including affidavits and other facts.  If such evidence is presented, whether controverted or not, it is accepted as true and survives summary judgment; if the evidence is controverted, standing must be supported adequately by the evidence adduced at trial." *Cadle Co. v. Neubauer*, 562 F.3d 369, 371 (5th Cir. 2009) (internal quotation marks omitted) (quoting *Defenders of Wildlife*, 504 U.S. at 561).

- 11 -

2019 WL 6037597, at *4 (E.D. Mich. Nov. 14, 2019) (holding that plaintiff's assertion that, as a result of defendant's FDCPA violations, "he suffered both 'emotional distress' (including 'anxiety') and 'physical symptoms including weakened nails and hair loss," sufficiently alleged concrete and particularized injuries for purposes of FDCPA claim); *Edeh v. Midland Credit Mgmt., Inc*., 748 F.Supp.2d 1030, 1041 (D. Minn. 2010) ("A consumer who has suffered emotional distress has suffered [actionable damage under the FDCPA] even if the emotional distress was not severe.").  Even if Moss is correct that there is no evidence that Moss intended to take a judgment against Smith or that it represented to Smith that it sought a judgment against him, a reasonable jury could find that Smith experienced stress or anxiety due to the fact that he was named in the justice-court petition, he was served with the lawsuit, and, after contacting Moss to report the mistake, the justice court suit was not promptly dismissed.  "Thus, unlike *Spokeo*, here the purported procedural violations are only the premise, not the sum total, of the harm to [Smith]."  *Boerner*, 326 F.Supp.3d at 675 (citing *Evans v. Portfolio Recovery Assocs., LLC*, 889 F.3d 337, 344 (7th Cir. 2018)).

2

Moss also challenges the causation element[8] of standing with respect to Smith's FDCPA claim.  Moss maintains, *inter alia*, that Smith was actually aware that Moss was not seeking to collect a debt from him, and that any risk of harm or injury resulted from Smith's

---

[8]Moss does not appear to contest the redressability element of standing, which requires that Smith prove that it is likely, not merely speculative, that his injury will be redressed by a favorable decision.  *See Defenders of Wildlife*, 504 U.S. at 561.

"own irrational belief that Defendant sought to collect a debt from him despite Defendant's assurance that it was not seeking payment from Plaintiff and Defendant's clear attempts to ensure collection efforts were not directed at Plaintiff." D. Br. 17.

To satisfy the causation element of standing, Smith must establish that his putative injury is fairly traceable to Moss's allegedly unlawful actions. The injury must not be the result of the independent action of some third party not before the court. *Defenders of Wildlife*, 504 U.S. at 560. At this stage of the analysis, although the causal connection "cannot be too speculative, or rely on conjecture about the behavior of other parties, [it] need not be so airtight . . . as to demonstrate that [Smith] would succeed on the merits." *Coal. for a Sustainable Delta v. Carlson*, 2008 WL 2899725, at *5 (E.D. Cal. July 24, 2008) (quoting *Ocean Advocates v. U.S. Army Corps of Eng'rs*, 402 F.3d 846, 860 (9th Cir. 2005)). "It is inappropriate for the court to focus on the merits of the case when considering the issue of standing. In examining the causation element of standing, the question to be asked is whether the line of causation between [the plaintiff's] injury and [the defendant's conduct] is too attenuated." *Hanson v. Veterans Admin.*, 800 F.2d 1381, 1385 (5th Cir. 1986) (internal quotation marks and citation omitted)).

Smith has proffered sufficient evidence to create a genuine issue of material fact regarding whether his emotional and other injuries are fairly traceable to Moss's alleged FDCPA violation without requiring speculation regarding the independent actions of third parties not before the court. Accordingly, because Smith has met his summary judgment burden with respect to the injury and causation elements of Article III standing, the court

- 13 -

concludes that Moss is not entitled to summary judgment on Smith's FDCPA claim on the ground that Smith lacks constitutional standing.

D

The court next considers whether Smith has standing to bring his TDCPA claim.[9]

Moss contends that because the TDCPA requires that a plaintiff show actual damages as an element of his claim, and because Smith has failed to provide evidence of any identifiable economic damages, mental anguish that meets the Texas standard, or attorney's fees and costs associated with the instant case, he does not have standing to assert his TDCPA claim. The court disagrees.

The court has already held that Smith has created a genuine issue of material fact on the question whether he suffered an injury in fact that is fairly traceable to Moss's conduct. *See supra* § III (C). Whether Smith can ultimately prove actual damages as a result of Moss's alleged violations of the TDCPA is a question that goes to the *merits* of Smith's claims, and "[i]t is inappropriate for the court to focus on the merits of the case when considering the issue of standing." *Montfort Square Shopping Ctr., Ltd. v. Goodyear Tire & Rubber Co.*, 2012 WL 2358163, at *5 (N.D. Tex. June 21, 2012) (Fitzwater, C.J.) (quoting *Hanson*, 800 F.2d at 1385); *see also Duarte ex rel. Duarte v. City of Lewisville, Tex.*, 759 F.3d 514, 520 (5th Cir. 2014) (holding that "[t]he district court erroneously granted summary judgment for lack of standing because it conflated the actual-injury inquiry for standing

---

[9]"[A] plaintiff must demonstrate standing for each claim he seeks to press." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008).

- 14 -

purposes with the underlying merits of the Duartes' constitutional claims."); *Cole v. Gen. Motors Corp.*, 484 F.3d 717, 723 (5th Cir. 2007) ("Whether recovery for [the plaintiffs' breach of contract] claim is permitted under governing law is a separate question; it is sufficient for standing purposes that the plaintiffs seek recovery for an economic harm that they allege they have suffered."); *BCC Merch. Sols., Inc. v. Jet Pay, LLC*, 129 F.Supp.3d 440, 464 (N.D. Tex. 2015) (Boyle, J.) ("In fact, the issue Defendants raise here—whether BCC can recover certain damages stemming from Defendants' alleged violations of BCC's contractual, common law, and statutory rights—ultimately goes to the merits of BCC's claims, and therefore, does not even implicate Article III standing.").  Moreover, even if, as Moss argues, Smith cannot prove that he suffered "any identifiable economic damages, mental anguish that meets the Texas standard, or attorney's fees and costs associated with the instant case," D. Br. 19, this would not necessarily mean that Smith did not suffer an injury in fact.  As explained, Smith has at least produced evidence that he experienced stress and anxiety as a result of Moss's alleged TDCPA violation.  Accordingly, Smith has standing to pursue his TDCPA claims, and the court denies Moss's motion for summary judgment on the ground that Smith lacks Article III standing.

IV

Having determined that Smith has met his summary judgment burden on the question of Article III standing, the court now turns to the merits of Smith's claims, beginning with Moss's contention that because its collection activities were not directed at Smith, he lacks

- 15 -

statutory standing[10] to pursue his FDCPA claim.

## A

Although a primary purpose of the FDCPA is "to promote consistent State action to protect consumers against debt collection abuses," the FDCPA does not limit recovery to debtors. *See* 15 U.S.C. § 1692(e).[11] Indeed, 15 U.S.C. § 1692k, which defines civil liability for FDCPA violations, provides that "any debt collector who fails to comply with any provision of [the FDCPA] with respect to any person is liable to such person[.]" *Id.* § 1692k(a). District courts in this circuit and others have recognized that "under certain circumstances, third-party, non-debtors have standing to bring claims under the FDCPA." *Prophet v. Myers*, 2009 WL 1437799, at *3 (S.D. Tex. May 21, 2009) (collecting cases).

In *Smith v. Moss Law Firm, P.C.* (*Smith I*), 2019 WL 201839, at *3 (N.D. Tex. Jan. 15, 2019) (Fitzwater, J.), in the context of Moss's Rule 12(b)(6) motion to dismiss, the court held that Smith had adequately pleaded statutory standing to pursue his FDCPA claim.[12] The

_____

[10]As the court noted in *Smith v. Moss Law Firm, P.C.*, 2019 WL 201839, at *1 n.1 (N.D. Tex. Jan. 15, 2019) (Fitzwater, J.), "'statutory standing' is an imperfect label that can be misused because it is not truly a 'standing' doctrine." Nonetheless, because the parties use this term throughout their briefing, the court will do so as well.

[11]Similarly, the TDCPA is intended to protect consumers, but does not limit recovery to consumers. Tex. Fin. Code Ann. § 392.403 creates a private right of action for TDCPA violations and provides: "A person may sue for: . . . actual damages sustained as a result of a violation of this chapter." Tex. Fin. Code Ann. § 392.403(a)(2). "[P]ersons who have sustained actual damages from a [TDCPA] violation have standing to sue." *McCaig v. Wells Fargo Bank (Tex.), N.A.*, 788 F.3d 463, 473 (5th Cir. 2015) (citing Tex. Fin. Code Ann. § 392.403(a)(2)).

[12]In reaching this holding, the court expressly declined to suggest a view on how it would decide a motion for summary judgment or how a jury would evaluate the merits of

- 16 -

court explained,

> [t]o state a claim under the FDCPA, Smith must plausibly plead that a debt collector has failed to comply with a provision of the FDCPA *with respect to* him. *See* 15 U.S.C. § 1692k(a). Smith alleges that Moss sought to collect a debt that Smith did not owe to Barclays; that Moss initiated a lawsuit against Smith to collect this alleged debt; that Smith informed Moss of the error; and that Moss nevertheless continued to pursue the lawsuit against Smith. Moss is correct that the account statement attached to the justice-court petition bears the name "Christopher O[.] Smith II." But that fact does not undermine Smith's allegations of collection activity directed at him—especially considering that the caption and party description within the justice-court petition bear the name "CHRISTOPHER O SMITH," without the "II" addition. Reading Smith's complaint and the justice-court petition under the proper standard, Smith has adequately pleaded that Moss's actions were directed toward him.

*Id.* at *4 (alterations in original)

B

In its motion for summary judgment, Moss reurges its standing argument from *Smith I*, contending that its business records, along with Smith's own admissions, show that there is no genuine issue of material fact as to whether Moss aimed its collection efforts at Smith. Moss maintains that when it received the case from its client (Barclays), the file bore the name "Christopher O. Smith" in conjunction with the debtor's date of birth and social security number; that its own research also indicated that the debtor could be identified as "Christopher O. Smith," and the justice-court petition was therefore correctly captioned; that

---

Smith's claims. *Smith I*, 2019 WL 201839, at *3.

- 17 -

the fact that another individual with the same name resided at the same address and accepted service of the original suit to collect the debt does not mean that Moss sued the wrong individual or directed its collection efforts toward Smith; that although Moss did not include the suffix "II" on the caption, Smith admits that he read the petition and attachments in their entirety, including the attached account statement with the name "Christopher O. Smith, II,"; that Smith and his wife knew that Smith did not have a Barclay's account; that as soon as Moss became aware that the process server had served Smith and not Smith's son, Moss immediately assured Smith that it was not seeking to collect a debt from him and had not filed the lawsuit against him; and that Smith had no reasonable belief that Moss was attempting to collect a debt from him and cannot maintain an FDCPA claim based only on the omission of a suffix in the caption of the justice-court petition.  In sum, Moss argues that

> the fact that [Smith] improperly accepted service of a suit not filed against him does not amount to [Moss] aiming a debt collection activity at [Smith].  Rather, [Moss] had no intent to collect a debt from [Smith] and, in fact, made no attempts to collect a debt from [Smith]; accordingly, [Smith] does not have standing to pursue FDCPA claims against [Moss].

D. Br. 13.  Regarding Smith's argument that Moss violated the FDCPA by refusing to confirm that the lawsuit would be dismissed, Moss contends that the fact that Smith chose to believe that a lawsuit was pending against him does not amount to a debt collection activity by Moss directed at Smith or somehow require Moss to dismiss the suit.

Smith responds that because the "debt agreement" and social security number provided by Barclays bore the correct name with a "II" suffix, Moss cannot credibly claim

- 18 -

that its own research indicated that the debtor could be named "Christopher O. Smith," without the suffix, and that genuine issues of fact are raised as to whether the misnomer was intentional; that Moss reviewed the agreement with Debtor's name and his social security number in skiptracing the account name, and that "[g]iven that Moss reviewed the correct debtor's name and social security number in skiptracing the account, genuine issues of fact are raised as to whether it intentionally disregarded the information before it so it could target Smith," P. Br. 15; that Moss's claim that it nonsuited the justice court suit in November 2017 because it discovered an out-of-state address for the Debtor is disingenuous and suggests that Moss "intentionally pick[s] and choos[es]" which name to run in its system, *id.*; that Moss persisted in the lawsuit after verifying the wrong party was sued and served; that Moss attempted to mislead or deceive Smith into believing that the mailing of the process papers back to Moss would resolve the issue; that given the numerous irregularities, the record raises genuine issues of material fact on the issue whether Moss directed debt collection activities against Smith; and that because Moss did not dismiss the case even after full knowledge that Smith was served and that the suit was pending against him and not the intended debtor, Smith was treated as an alleged debtor with standing to bring an FDCPA claim.

Moss replies that the "debt agreement" to which Smith refers is actually a single monthly account statement that proves nothing about what Moss found when skiptracing the account; that the client (Barclays) provided the name "Christopher O. Smith," *without the suffix*, when it placed the account, so that Smith's contention that Moss's social security information bore the correct debtor's name with a "II" suffix is incorrect; that Moss's

- 19 -

Skiptracing Policy requires an employee skiptracing the account to add an alias or a/k/a different from the name given by Barclays only when *all* sources show an alternative name for a debtor; that Smith has "failed to direct the Court to any evidence that proves Defendant could not have legitimately identified Plaintiff's debtor-son as 'Christopher O. Smith' and, thus, cannot create an issue of fact as to whether the 'misnomer was intentional,'" D. Reply 6; that there is no evidence that Moss knew prior to serving Smith that two individuals with the same or similar names resided at the Sun Valley address or that Moss employed a scheme to target Smith and his assets by intentionally mis-captioning the justice court petition; that the undisputed evidence shows that Moss uses the consumer's *social security number* and *address* to confirm a debtor's information, it is undisputed that the social security number and address provided by Barclays was that of Debtor, and nothing indicates that Moss searched skiptracing sources by inputting Smith's or Debtor's *names* to confirm account information; that the skiptrace that revealed an out-of-state address for Debtor was completed *after* Smith made Moss aware that two individuals with the same or similar name resided at the Sun Valley address, and the fact that the skiptracing process performed by different employees at different dates produced one different result does not, by itself, create a genuine issue of fact as to Moss's intent; that after Smith's wife called Moss, nothing in the record indicates that Moss intended to proceed with a suit *against Smith*; that Moss requested that Smith return the papers he was served with because they included sensitive data; and that Smith's only "proof" that Moss intentionally filed suit against *him* and not Debtor is that the caption on the justice court petition stated "Christopher O. Smith," but the record indicates

- 20 -

that Moss reasonably believed Debtor went by the name "Christopher O. Smith," as provided by Barclays, and Smith has not shown that Debtor does not, in fact, use this name.

C

The FDCPA provides that "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d (emphasis added). The FDCPA also provides that "any debt collector who fails to comply with any provision of this subchapter with respect to *any person* is liable to such person." 15 U.S.C. § 1692k(a) (emphasis added). "Persons subjected to abusive debt collection by a debt collector who was attempting to collect a debt from another person may bring an action against the debt collector under sections of the FDCPA not specifically limited to consumers." *Amelina v. Mfrs. & Traders Tr. Co.*, 2016 WL 3982483, at *8 (S.D. Cal. July 21, 2016) (citing cases); *see also Wright v. Fin. Serv. of Norwalk, Inc.*, 22 F.3d 647, 649-50 (6th Cir. 1994) ("[A]bsent a limitation in the substantive provisions, the ordinary and common understanding of § 1692k is that any aggrieved party may bring an action under § 1692e. . . . [T]he purpose of the FDCPA and the legislative history of the act also support this conclusion."); *Eley v. Evans*, 476 F.Supp.2d 531, 532-33 (E.D. Va. 2007) (holding that "*any* aggrieved party may bring an action under the FDCPA" and therefore the plaintiff who was not the consumer-debtor had standing to sue under 15 U.S.C. §§ 1692d, 1692e, and 1692f).[13] Many courts have concluded that "any

---

[13]In its motion, Moss relies on *Christy v. EOS CCA*, 905 F.Supp.2d 648 (E.D. Penn. 2012), maintaining that the court in that case was considering a "near identical issue." D. Br.

person who comes in contact with the proscribed debt collection practices may bring a claim under certain sections of the FDCPA." *Siberesky v. Borah, Goldstein, Altschuler & Schwartz, P.C.*, 2000 WL 1448635, at *4 (S.D.N.Y. Sept. 28, 2000) (citation omitted).  In order for a non-consumer to have standing under the FDCPA, however, the alleged debt collection activities must have been directed at the plaintiff.  *See Mathis v. Omnium Worldwide*, 2005 WL 3159663, at *3 (D. Or. Nov. 27, 2005) (holding that the FDCPA "does not limit causes of actions to those brought by a 'consumer,' so long as the alleged conduct was directed at the plaintiff"); *Dewey v. Assoc. Collectors, Inc.*, 927 F. Supp. 1172, 1174 (W.D. Wis. 1996) (holding that Congress "did not intend to provide damages to those who did not experience any abusive behavior").

A reasonable jury could find that Moss directed its collection activities at Smith.  Although Moss contends that it intended to sue the Debtor, not Smith, the summary judgment record contains evidence, for example, that the caption and party description in the justice-court petition refer to "CHRISTOPHER O SMITH," not "Christopher O. Smith II"; that Smith was served with process; and that the lawsuit against Smith was not dismissed until several weeks after the misidentification was brought to Moss's attention.  The evidence in the summary judgment record is sufficient to support the reasonable finding that Smith was

---

12. In *Christy*, however, the plaintiff alleged violations of 15 U.S.C. § 1692c(b).  The court explained: "Courts in this district and elsewhere have required a plaintiff bringing claims under certain FDCPA subsections, including § 1692c(b), to be a 'consumer' as defined in § 1692c(d)."  *Christy*, 905 F.Supp.2d at 652.  Because Smith does not seek to recover under § 1692c(b), *Christy* is distinguishable and its reasoning inapposite.

subjected to the challenged debt collection practices[14] and thus has standing to sue under 15 U.S.C. § 1692k.  Accordingly, the court denies Moss's motion for summary judgment on this ground.

V

Finally, the court considers Moss's contention that it is entitled to summary judgment on Smith's FDCPA and TDCPA claims based on the bona fide error affirmative defense.

A

Generally speaking, the FDCPA is a strict liability statute, which does not require the plaintiff to show that the violation was either knowing or intentional.  *See, e.g., Vangorden v. Second Round, Ltd. P'ship*, 897 F.3d 433, 437-38 (2d Cir. 2018) ("The FDCPA is 'a strict liability statute' and, thus, there is no need for a plaintiff to plead or prove that a debt collector's misrepresentation of a debt obligation was intentional." (citation omitted)); *Stratton v. Portfolio Recovery Assocs., LLC*, 770 F.3d 443, 448-49 (6th Cir. 2014) ("The FDCPA is a strict-liability statute: A plaintiff does not need to prove knowledge or intent[.]").  The FDCPA provides a "narrow exception to strict liability," however, for bona fide errors.  *Clark v. Cap. Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1177 (9th Cir. 2006).  Section 1692k(c) provides,

---

[14]"When this court denies rather than grants summary judgment, it typically does not set out in detail the evidence that creates a genuine issue of material fact."  *Valcho v. Dall. Cnty. Hosp. Dist.*, 658 F.Supp.2d 802, 812 n.8 (N.D. Tex. 2009) (Fitzwater, C.J.) (citing *Swicegood v. Med. Protective Co.*, 2003 WL 22234928, at *17 n.25 (N.D. Tex. Sept. 19, 2003) (Fitzwater, J.)).

- 23 -

> [a] debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c).  Using nearly identical language, the TDCPA also provides a defense for debt collectors accused of statutory violations upon proof that the "the action complained of resulted from a bona fide error that occurred notwithstanding the use of reasonable procedures adopted to avoid the error."  Tex. Fin. Code Ann. § 392.401 (West 2016).

The bona fide error defense is an affirmative defense for which the defendant has the burden of proof.  *Reichert v. Nat'l Credit Sys., Inc*., 531 F.3d 1002, 1006 (9th Cir. 2008); *Wallace Roofing, Inc. v. Benson*, 2013 WL 6459757, at *7 (Tex. App. Nov. 27, 2013, pet. denied) (holding that under the TDCPA, defendant "had the burden of pleading and proving bona fide error as a defense").  To be entitled to the defense, the defendant must first establish that the violation was "not intentional."  *See* 15 U.S.C. § 1692k(c); *Johnson v. Riddle*, 443 F.3d 723, 727-28 (10th Cir. 2006).  This inquiry is inherently subjective and "becomes principally a credibility question" as to whether the defendant intended to violate the FDCPA.  *Johnson*, 443 F.3d at 728.  Once the subjective intent is established, the defendant must also demonstrate that the error was "bona fide" and that it occurred "notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."  *See* 15 U.S.C. § 1692k(c); *Johnson*, 443 F.3d at 729.  "Whereas the intent prong of the bona fide error defense is a subjective test, the bona fide and the procedures prongs are necessarily

objective tests." *Johnson*, 443 F.3d at 729 (citations omitted). This is a "fact-intensive inquiry." *Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1274 (11th Cir. 2011); *see also, e.g., Allen v. Scott*, 2011 WL 13079866, at *5 (N.D. Tex. May 18, 2011) (Furgeson, J.) (denying summary judgment based on bone fide error defense, and noting that "[a]n inquiry such as this one, which involves questions of intent, reasonableness, and [defendant]'s credibility, is more appropriately left for the jury to decide."); *Soren v. Equable Ascent Fin., LLC*, 2012 WL 2317362, at *4 (D. Utah June 18, 2012) ("prevailing on the [bona fide error] defense has proven elusive . . . as it requires a fact-intensive examination . . . combined with an evaluation of the reasonableness of the procedures." (alterations in original) (citation omitted)).

B

Moss contends that the court should grant summary judgment on all claims because even if Smith could show a statutory violation, it resulted from a bona fide error despite Moss's procedures reasonably adopted to avoid such error. Moss points to its Skiptracing Policy and argues that requiring employees to confirm account information using multiple sources and adding an alias only when indicated by all sources is a procedure reasonably crafted to avoid using the wrong name on a debt collection communication, including the caption of a petition; that Moss's omission of the suffix from Smith's name is the type of human error that the bona fide error defense was designed to address; that its records indicate that Debtor's account was skiptraced following Moss's procedures on numerous occasions and that Moss's skiptracing efforts indicate that the name and address for service provided

- 25 -

by Barclays were correct and do not indicate the circumstances were satisfied to add an "a/k/a" to the account; that even if Moss's skiptracing efforts would have revealed the name "Christopher O. Smith, II" on all sources and an a/k/a should have been added, any failure to do so by a Moss employee is the result of an unintentional, bona fide error; and that there is no indication that the omission of the suffix "II" was an intentional decision by Moss to collect a debt from an improper party.

Smith responds that Moss's wrongful collection was intentional: Moss intentionally chose to put the name "Christopher O. Smith" in its skiptracing system despite the fact that the contract and social security number reflected that the Debtor's correct name was "Christopher O. Smith, II"; Moss's system does not have a mechanism for ensuring that the name on the pleadings corresponds to the name on the debt agreement or for ensuring that the name on the debt agreement is the name skiptraced on the account; the skiptracing system can be manipulated and "works only as good as the information intentionally inputted into the system," P. Br. 22; the process server served Smith on a Sunday, in violation of Rule 6 of the Texas Rules of Civil Procedure; Moss instructed Smith to mail back the papers after he was served, which was deceptive because mailing back the process would not have dismissed the lawsuit and could have led to a default judgment; Moss made the choice not to take any action, aside from making statements, to truly assure Smith that no action would be taken against him; and Moss chose not to amend, correct, or dismiss the lawsuit at any point after learning about the misnomer in the justice-court petition.  Regarding the maintenance of reasonable procedures, Smith contends that Moss's system lacked relevant

- 26 -

procedures to avoid the numerous types of errors involved in this matter (i.e., the use of a misnomer on the pleadings, the service of pleadings on the wrong party due to the misnomer, and false statements of law in communications with Smith), including procedures to help avoid human or clerical factual mistakes in the handling of the file.

In its reply, Moss contends that Smith misstates the law and the evidence. Regarding the latter, Moss explains that it does not skiptrace accounts by searching a consumer's name; that Smith's contention that Moss does not use human oversight of its system is defied by the record; that internal account notes verify that an employee skiptraced the Debtor's account on several occasions to confirm the information in Moss's internal system, and that when Smith's wife called stating that the petition was mis-captioned, Moss took steps to ensure the return of service was not filed and began an investigation as to why an "a/k/a" was not added to the petition; that Moss never gave legal advice to Smith, informed Smith that he was not the intended party of the lawsuit, offered to have the papers served on him picked up, and indicated that it intended to go back to the justice court to amend or reissue citation to resolve the issue.  Regarding its procedures, Moss maintains that it relied on Barclays' representation that the consumer's name was "Christopher O. Smith" when drafting the petition, and that it implemented a skiptracing policy reasonably developed to avoid errors in the name on the petition, and Smith has produced no evidence "that any misnomer on the petition was anything more than a factual or clerical error and has failed to show that the Skiptracing Policy that denotes how to confirm a consumer name and when to add an a/k/a is not reasonably adapted to avoid such a misnomer."  D. Reply 24.

- 27 -

C

Because Moss will have the burden of proof on the bona fide error affirmative defense at trial, to obtain summary judgment, it must satisfy the "heavy" beyond peradventure standard.  Although a reasonable jury could certainly find that Moss is entitled to the protection of the bona fide error defense, the court cannot say that this is the *only* reasonable finding that the jury could make from the evidence.

Regarding the first and second elements of the defense, a reasonable jury could find that, to the extent Moss's conduct after the October 16, 2017 telephone call violated the FDCPA or TDCPA,[15] the conduct was intentional and not the result of a bona fide error. Regarding the third element, whether Moss's process for verifying account information, including its Skiptracing Policy, was "reasonably adapted to avoid" errors such as occurred here due to the account holder's use of an alias or alternate name is a question of fact for the jury to decide.[16]  Because Moss has not carried its heavy burden of establishing the bona fide error affirmative defense beyond peradventure, the court denies Moss's motion for summary judgment insofar as based on this defense.[17]

---

[15]The court expresses no view on whether this conduct violated either statute.

[16]For example, under the Skiptracing Policy, an alternate name will not be entered into the system unless "*all* sources" show a different name other than the name provided by the client. D. App. 176.  A reasonable jury could find that this requirement was not reasonably adapted to avoid errors such as occurred in this case.

[17]In denying Moss's motion for summary judgment, the court does not suggest that Moss cannot prevail on this defense at trial.

- 28 -

*   *   *

Accordingly, for the reasons explained, the court denies Moss's motion for summary

judgment.

**SO ORDERED**.

February 6, 2020.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE